# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ANTHONY WILSON,

|  |  |  |  |
|---|---|---|---|
| | Petitioner, | : | Case No. 3:13-cv-217 |
| - vs - | | | District Judge Timothy S. Black |
| | | | Magistrate Judge Michael R. Merz |
| WARDEN, London Correctional Institution, | | | |
| | | : | |
| | Respondent. | | |

# REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits. Wilson has filed a Petition (ECF No. 2), an Amended Petition (ECF No. 4), and an additional Amended/Supplemental Petition (ECF No. 11-1). Respondent has filed the State Court Record (ECF Nos. 12, 30, & 31) and an Answer/Return of Writ (ECF No. 32). The Court set a date of twenty-one days after the Answer for Wilson to file a reply (Order, ECF No. 29, PageID 3472). That time expired August 17, 2015, but no reply has been filed.[1]  The case is accordingly ripe for decision.

Wilson pleads the following thirty-five grounds for relief:

> **GROUND ONE:** Petitioner alleges that he was given ineffective assistance of appellate counsel throughout the compulsory legal process.
>
> **Supporting Facts:** Appellate counsels failed to challenge the state-court proceedings within their entirety. Counsel did not attack

---

[1] If Wilson were still incarcerated, he would be entitled to the benefit of the "mailbox" rule which treats prisoner filings as made when deposited in the prison mail system.  However, Wilson has given the Court a non-prison address.

or facially challenge the conviction by way of raising meritorious claims or assignments of error on appeals.

**GROUND TWO:** Petitioner alleges that he [sic] his rights were not protected under the Sixth Amendment in all stages of the legal process due to ineffective assistance of counsel.

**Supporting Facts:** Trial counsel permitted the petitioner to be convicted of charges which were not contained legally within the judgment entry and opinion of the trial court. Namely, counsel permitted petitioner to be sentence to offenses that is contrary to the findings of the jury and/or as enumerated by the Ohio Revised Code. Further, counsel permitted Prosecutors to withhold discovery materials, failed to obtain witnesses statements, failed to subpoena witnesses, failed to investigate witnesses, failed to investigate tangible items, failed to acquire all tangible items, allowed the trial court to forbid a public tribunal of the legal proceedings, obtain experts, allowed jury misconduct, sustain a proper defense, and failed to advise Petitioner of a plea deal negotiation in violation of Ohio and United States Constitutions Due Process Clauses.

**GROUND THREE:** The Judgment Entry entered by the Trial Court does not comport with the requirements imposed by the Ohio General Assembly within its charged authority to legislate and promulgate R.C. § 2505.02.

**Supporting Facts:** The judgment of the trial court is not a final appealable order under the definition of Ohio law, as it fails to comport to the requirements imposed by R.C. § 2505.02 and Ohio Criminal Rule 32.

**GROUND FOUR:** The judgment is void, as the judgment of the Montgomery County Common Pleas Court lacked jurisdiction to impose any sentence.

**Supporting Facts:** The Ohio General Assembly has set forth a compulsory process for the judiciary within the State of Ohio. Failure to comport to the requirements and processes set forth by the General Assembly and the Supreme Court of Ohio, renders any judgment to be nugatory, void or surplusage. The criminal judgment within this matter is such a judgment; due absence of subject matter jurisdiction to impose the instant sentence.

**GROUND FIVE:** The conviction for complicity to felonious assault was against the manifest weight of the evidence and the

2

evidence was insufficient to support appellant's conviction for felonious assault.

**Supporting Facts:** The conviction as a result of the trial was mitigated by the fact that the State Prosecutor erased the surveillance videos which provided real-time evidence of the events as they actually occurred; additionally the State purposefully allowed a witness to testify regarding the contents of the 39 Central Street surveillance video without defense counsel being given the opportunity to challenge the authenticity of completeness of the recording or present a rebuttal expert to testify, as to the recordings on their factual accuracy or in complying with the requirements of the Ohio Rules of Evidence. The State altered, misstated and manipulated the evidence to sustain an indictment and conviction that did not corroborate the witnesses statements and evidence.

**GROUND SIX:** Ohio Courts showed complete prejudice towards Petitioner when it determine a witness misspelled name was not newly discovered evidence when Petitioner acted in complete due diligence for the motion for leave to file a motion for new trial.

**Supporting Facts:** Eugene Talbott testified during the preliminary hearing and as well as at trial that a person by the name of "Ryan Davis" was there when the incident occurred. During the evidentiary hearing for the motion for leave Petitioner testified that he became aware of the witness correct name by being incarcerated with him at the same prison facility (LoCI) located in London, Ohio. Petitioner never knew that Davis' real name was actually "Brian Davis," which prevented a subpoena from being filed during trial under his legal correct name. Petitioner acted due diligently to procure the existence of partial witness name who had complete valuable information about the alleged conduct of the Petitioner during the night in question. This information should have been accepted as being newly discovered testimony that was not available at trial for Petitioner to utilize due to the extreme differences of the spelling and pronunciation of the name "Ryan" and "Brian."

**GROUND SEVEN**: The State of Ohio withheld exculpatory materials, as well as the Gun Shot Residue Test (GSR) analysis of the Petitioner taken within a time before and after arrest. Therefore, this resulted in a material prejudice to the Petitioner.

**Supporting Facts:** The results of the Gun Shot Residue Test (GSR) analysis and other scientific analysis conducted were never

3

remitted during discovery to the Petitioner, which resulted within material prejudice to the rights of the Petitioner. This evidence could have altered the outcome of the trial or such other criminal proceedings within this matter.

**GROUND EIGHT:** The trial court erred in refusing to instruct the jury on the affirmative defense of defense of another; the lesser included offense of assault; and the inferior degree offense of aggravated assault.

**Supporting Facts:** The trial court abrogated rights conferred under the Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States, by refusing to instruct the jury as to a lesser included offenses when the evidence, documents, testimony, and reports support the instructions of an inferior degree offense to be considered by the jury during deliberations. Testimony at trial validated that Petitioner was being shot at be other individuals and sustained injuries before the victim in this matter was even harmed.

**GROUND NINE:** The trial court erred in refusing to permit defense counsel to impeach a witness, Eugene Talbott, by the prior criminal history of the witness.

**Supporting Facts:** The State of Ohio violated the Fifth and Fourteenth Amendments of the United States Constitution, by failing to permit counsel to the Petitioner to attempt to impeach the testimony of a witness for the State of Ohio; due the witness acknowledging his prior convictions, should have precluded the testimony within its entirety. This resulted in material prejudice.

**GROUND TEN:** The trial court erred by admitting the hearsay testimony of Moonlight Security guard Jason Morris, Officer Gregory Thornton, and all others regarding the contents of the surveillance videos. The State asserted the Best Evidence Rule, that these parties were in-effect experts attesting to the authenticity and content of the recordings; while these parties was never qualified as an expert witness to implicate or utilize the Best Evidence Rule.

**Supporting Facts:** The State of Ohio was permitted to admit the testimony of witnesses as to content and authenticity of video evidence, without being qualified as an expert of first-hand witnesses of the events on the date offense. None of these parties was an expert in the authentication of video evidence; therefore, this resulted in material prejudice to the compulsory process and

offended the Constitutional rights of the Petitioner. When the Detective stated in the preliminary hearing that he possessed all the surveillance videos to what occurred on Central Avenue.

**GROUND ELEVEN:** The State of Ohio selectively and vindictively prosecuted Petitioner, however, by clear and convincing evidence pointed to alternate suspects, and the State punished Petitioner beyond the normal means of the Ohio and United States Constitution.

**Supporting Facts:** The State of Ohio and its agents selectively and vindictively prosecuted Petitioner when the evidence clearly pointed to alternative suspects to be the cooperates other than Petitioner, the State refused to acknowledge these perpetrators during their review of the case to seek charges, indictments, and convictions through *Brady* violations. The eyewitnesses testified that they did not observe Petitioner with a weapon at all that night of the offense. As such, the description given to police of the actual party who possessed the weapon, did not meet the description of the Petitioner. The description given by Witness Strobridge, matched the individual apprehended that night, with a weapon a 9mm Ruger, behind the "Met" building. Therefore, there was insufficient evidence from the surveillance video retrieved from 50 Central Street to show any corroborative evidence that the Petitioner was firing any weapon on the night of the offense.

**GROUND TWELVE:** The trial court violated the intent of the Ohio General Assembly, by imposing financial sanctions without documentary evidence.

**Supporting Facts:** The Ohio General Assembly has promulgated a process for imposition of financial sanctions within R.C. § 2929.19. The imposition of financial sanctions must be independently predicated some form of independent and verifiable documentary evidence. Failure to submit this evidence violates the intent of the General Assembly within the promulgation of the statute. This would in-effect permit the trial court to render the vested authority of the General Assembly to legislate to be devoid of statutory or constitutional authority.

**GROUND THIRTEEN:** The trial court erred in not instructing the jury during voir dire, as to the specific elements of the offenses the Petitioner was  convicted were not general liability by nature, and require establishment of mens rea to result within a conviction.

**Supporting Facts:** The right of due process requirements that a trial court instruct a jury as to the necessity to establish multiple step criminal process for determination of a criminal offense, where there is no presence of the charged offense(s) being of general liability. Failure to complete this basic functions renders the criminal proceedings to nugatory and abrogates the due process rights of the Petitioner. The due process rights of the Petitioner were in-fact abrogated by failure to establish general multiphase criminal elements under the legal theory of mens rea, as the offenses within the conviction were not involving general liability.

**GROUND FOURTEEN:** The trial court erred when it became aware that jurors had a personal relationship to the parties involved within the criminal proceedings, and failed to excuse the juror.

**Supporting Facts:** The trial court erred when it permitted juror Sherrer to continue to serve upon the jury, when the court become aware that the juror had a direct familial relationship with Rayshawn Sherrer, who was believed to be a person of interest within the criminal investigation and offense charged within the indictment of the Petitioner. Juror Thornton was believed to be a relative of Officer Thornton who testified at trial was also a part of the proceedings. This would in-effect implicate a violation of the Fifth and Fourteenth Amendments of the United States Constitution.

**GROUND FIFTEEN:** The Petitioner was prejudiced when the trial court conducted ex parte communication with the jury outside his presence and counsel.

**Supporting Facts:** The trial court is not permitted to conduct instruction or direct or indirect communication with the jury outside of the presence of the Petitioner or his counsel. As such, the Petitioner was prejudiced because he was unaware of the content of the communication between the trial court and the jury, and could not challenge facially any of the instruction or the content thereof.

**GROUND SIXTEEN:** The trial court erred in failing to sentence the Petitioner to a proportionate sentence in-line with that of the principal offender.

**Supporting Facts:** The principal offender within this matter was sentenced to a significantly lesser sentence than that of the Petitioner, and this resulted in the Petitioner being prejudiced as there was no mitigation upon the record or otherwise, to indicate a

basis for imposing such a sentence in violation of the intent of the General Assembly within its promulgation of Section 2900 of the Revised Code.

**GROUND SEVENTEEN:** Trial court deprived Petitioner of his right to a fair trial by allowing the State and its agents to dictate which apparel items Petitioner was to wear at trial; refusing to permit Petitioner the constitutional right of wearing clothing furnished by relatives.

**Supporting Facts:** The appearance of the Petitioner within clothing pick by the State and its agents caused an inference of guilt to the jury because Petitioner wore the same shirt and pants throughout the entire trial. Which caused the jury to concluded that Petitioner was in the custody of the Montgomery County Jail. This inference of guilt before the jury, has a potential to alter the mindset of the jury and/or to have them draw the conclusion that there was some type of guilt of the Petitioner. The failure of counsel to proceed toward aggressively arguing a violation of constitutional protections; gives rise to a claim of ineffective assistance of counsel; due process of law; equal protection of law; and freedom from cruel and unusual punishment. This action is violative of the standard of trial practice within the jurisdiction of Federal and Ohio Constitutional Laws.

**GROUND EIGHTEEN:** The trial court erred when it failed to permit the Petitioner access to public records necessary for perfection or establishment of any type of justiciable claim to support pending litigation.

**Supporting Facts:** In Ohio R.C. § 149.43(B)(8), requires that a trial court or sentencing judge to authorize the access of a criminal defendant to records related to the investigation or the prosecution of a criminal proceeding. The Petitioner avers that this is the current case, the trial court erred when it denied the Petitioner to documents that were integral to the protections of the compulsory process simply because of some type of animus toward the Petitioner. The information was related to an active pending pleading in the appellate and trial court levels to show a *Brady* violation had occurred during the legal proceedings, violation Ohio and United States Constitutions.

**GROUND NINETEEN:** The Petitioner's right to a fast and speedy trial was violated as a result of the criminal proceedings taking over three years.

**Supporting Facts:** The petitioner did not willfully consent to continuance of proceedings, as such the right to fast and speedy trial were abrogated by the State of Ohio and the trial court in accordance with Ohio and United States Constitution.

**GROUND TWENTY:** The trial court erred when it did not conduct a de novo sentencing hearing of the Petitioner within a manner consistent with Ohio case authorities.

**Supporting Facts:** The trial court indicated that it only had to conduct a hearing related to the Post-Release Control imposition of the Petitioner. However, this action is contrary to precedent established by the Supreme Court of Ohio, which requires a complete de novo sentencing hearing.

**GROUND TWENTY-ONE:** The trial court erred when it corrected counts three and four of the indictment by nunc pro tunc entry, in violation of Ohio law.

**Supporting Facts:** Ohio law requires that where a court enters a full or complete disposition to any such criminal charge, that it be done to complete the provision of the rights of a criminal defendant. The failure of the trial court to ensure this renders the judgment as to those counts to be void. The trial court failed to properly sentence Petitioner to the actual crimes determine by the Jury and in the indictment.

**GROUND TWENTY-TWO:** The trial court erred when it entered its entry without a complete signature required for completion and imposition of a final judgment.

**Supporting Facts:** The trial court utilized a "rubber stamp" when it tendered its entry to the Clerk of the Court for journalization upon the journal of the Montgomery County Common Pleas Court. This action does not comport with Criminal Rule 32, and therefore nullifies the judgment within its entirety; the court is without jurisdiction to correct the judgment.

**GROUND TWENTY-THREE:** The trial court erred when it failed to notify the Petitioner of a video teleconference under Criminal Rule 43.

**Supporting Facts:** A trial court must notify a party to any form of criminal proceeding involving video teleconference of the proceeding and permit the party to prepare for the legal proceeding. Failure to do this is violative of Criminal Rule 43 and

8

the Constitution of the United States and Ohio Due Process Clauses.

**GROUND TWENTY-FOUR:** The trial court erred when it applied the legal theory of res judicata to the Motion for Sentencing.

**Supporting Facts:** Within Ohio, res judicata does not attach where there is an absence of an original sentence or a void sentence. This does not have to be raised upon direct review, but can be attacked collaterally at any time as stated by the Supreme Court of Ohio.

**GROUND TWENTY-FIVE:** The trial court erred when it failed to impose a sentence for complicity, and the refusal to void one charge for sentencing purposes.

**Supporting Facts:** The Petitioner was charged, indicted, tried, and convicted by the jury of complicity. The trial court lost jurisdiction to impose a sentence upon Petitioner for the complicity offenses, as there has been a significant amount of time that has passed from the date of conviction and actual time a sentencing was to occur for the complicity charges. Therefore, as a result of imposing sentence for the wrong offense the trial court in effect nullified its ability to impose a new sentence to correct its error, by no fault of the Petitioner.

**GROUND TWENTY-SIX:** The Trial and Appellate Court violated Petitioner's constitutional rights by not conducting a competency evaluation by qualified experts.

**Supporting Facts:** The Courts violated Petitioner's constitutional rights under due process clauses by not conducting a competency hearing when trial counsel requested such hearing before the trial commenced. Ohio and Federal Laws require that a competency hearing be conducted once a party move the court by motion to schedule mental evaluation. Once the motion was submitted and the trial court made its own independent findings to the mental evaluation of the Petitioner it violated due process clauses of the United States and Ohio Constitution.

**GROUND TWENTY-SEVEN:** The trial court erred as a matter of Law when it allowed juror misconduct of a Stealth Juror, Foreign Jury, Jury of the Vicinage and Vicinage, Challenge to the Array, Challenge for Cause, Juror Misconduct, and Embracery.

**Supporting Facts:** The trial court permitted Due Process Federal and State violations to occur by not allowing Petitioner to contest the jury being sworn under oath, which a stealth juror was among the jury, as well as jurors who did not live in the county where the incident took place, and overruling all challenges as being a stall tactic by trial counsel to the legal proceedings.

**GROUND TWENTY-EIGHT:** The trial court erred as a matter of due process provisions by not allow citizens to attend a public tribunals.

**Supporting Facts:** The trial court disregarded Federal and State Constitutional Due Process Provisions by not allowing Petitioner's family, friends, and any other partial person to sit in the court while the legal proceedings went underway jury selection, and evidentiary hearing for the motion for leave to file a motion for new trial. This prevented Petitioner from having a constitutional hearing regulated by Federal and State Laws enacted by the General Assembly.

**GROUND TWENTY-NINE:** Trial counsels representation for the evidentiary violated the Sixth and Fourteenth Amendment to the United State Constitution.

**Supporting Facts:** Counsels appointed by the Montgomery County Common Pleas Court violated Petitioner's right to effective assistance of counsel for the Motion for Leave by not filing for discovery, subpoena witnesses, amend to the pleadings, argue void sentence issue, and secure all other necessary experts to litigate the matter sufficiently and adequately.

**GROUND THIRTY:** The trial court erred as a matter of Federal and Ohio Laws by not allowing Petitioner the opportunity to act in a pro se capacity for the Motion for Leave to File a motion for new trial proceeding.

**Supporting Facts:** The trial court erred by refusing to permit Petitioner to exercise his constitutional right to proceed in a pro se fashion to litigate the evidentiary hearing held for the motion for leave to file a motion for new trial when all the pleadings filed in the instant matter were in pro se capacity, the Court violated Ohio and United States Constitution Due Process Clauses.

**GROUND THIRTY-ONE:** The State Court erred during the post-conviction proceedings by not providing service, and refusing to

"make the issues up" pursuant to O.R.C. §2953.21(D) enacted by the General Assembly and Ohio Supreme Court authorities.

**Supporting Facts:** The State of Ohio declined to provide service of their pleadings according to the Rules of Procedure during the post-conviction proceeding in the trial court level, while declining to "make the issues up" in the ten (10) day time period allowed under Ohio Revised Code 2953.12(D), violating Petitioner's constitutional rights of due process.

(Amended Petition, ECF No. 4, PageID 86-93.)

On December 9, 2013, after receiving leave of court, Wilson filed an Amended/Supplemental Petition adding the following four additional grounds for relief:

**GROUND THIRTY-TWO:** The clerk of courts' reproduction of the original December 13, 2007 termination entry was confirmed through certification by the clerk, deputy sheriff, and prosecutor officials authentication that the replica termination entry was indeed a true an exact replica of the original entry form that did not bear a judge's signature to finalize the conviction and enforce the judgment accordingly as guaranteed under the United States and Ohio Constitutions.

**Supporting Facts:** Ohio Laws and Rules of Procedure dictates that an entry of finalization must be signed by the Judge who terminated the case, and/or the Administrative Judge of that Ohio County, or the Chief Justice of the Ohio Supreme Court, furthermore, setting forth jurisdictional requirements to appeal the judgment entered on the record pursuant to O.R.C. 2505.05 and Ohio Criminal Rule 32(C). Petitioner's original entry of conviction did not satisfy such necessary requirements as outlined in the *State v. Baker*; and *State v. Lester* decisions of the Ohio Supreme Court. Which the necessary jurisdiction components was never set forth to the Second District Court of Appeals to inherit the case from the Montgomery County Common Pleas Court. The replica termination entry validates the original entry of finalization was unconstitutional preventing the judgment from going into effect. Because the burden leaves upon the clerk to issue all judgments, pleadings, and service of decisions entries, for the foregoing reasons stated above, Appellant contends that the replica "Rubber Stamped" judgment entry indorsed by the clerk, deputy sheriff, and assistant prosecutor attorney was indeed a true and exact reproduction of the original trial court judgment entry, and this

11

matter should be reversed and remand back to either enter a "Revised" or "Amended" entry for Appellant can file an appeal according to law.

**GROUND THIRTY-THREE:** Ohio courts erred as a matter of law to apply the res judicata standard for sentencing when it does not apply to cases where a sentence was either never imposed, contrary to law, and/or void on its face, further this error of law violates due process provisions under the United States and Ohio Constitutions.

**Supporting Facts:** The United States Constitution dictates that each citizen is entitled to due process clauses, especially when it involves a criminal conviction. Petitioner converse that Ohio courts erred as a matter of law when it considered the motion for sentencing to be res judicata, knowing that res judicata does not apply towards sentences either improperly imposed, never imposed, or void. The sentence and judgment entries must be corrected by collateral attack. The restriction by res judicata cannot apply to void, never imposed, or invalid sentences. The sample structure of the form to this matter decides whether the December 13, 2007, and the February 23, 2011, termination entries are still contrary to law and cannot be legally binding. On the record the court never rightfully corrected the error of the incarcerated sentence imposed. It's clear that a term of four years was imposed in the nunc pro tunc entry. However, it's unclear what the actual charge that the sentence was imposed from. Is it count 1, count 2, count 3 or count 4? Further complicating the matter is that the four-year sentence in the original judgment entry was only imposed on one of the offenses of felonious assault. Leaving the actual convicted offenses, complicity, without the imposition of a sentence of punishment as required under the United States and Ohio Constitutions. Because the trial court took the initiative to change the offenses of complicity and modified the offenses on its own initiative for the purposes of fact findings at sentencing, Appellant contests that this Court should imposed a sentence to the complicity offenses which Appellant was charged, indicted, and tried upon as specified in the indictment for counts three (3); four (4) and was also signed off by the trial court's jury.

**GROUND THIRTY-FOUR:** Because the trial court failed to impose a sentence for the charges of "complicity" which appellant was charged, indicted, tried, and convicted by the jury, the trial court lost jurisdiction to impose a sentence upon appellant due to the significant amount of time passed from the date of conviction and actual time a sentencing was to occur, it violated the

constitutions of the United States and Ohio; the delay denied appellant due process, which guarantees the administration of justice "without denial or delay.

**Supporting Facts:** Ohio courts cannot justify why the Montgomery County Common Pleas Court refused to sentence Appellant for the offenses for which he was charge, indicted, tried, and convicted pursuant to. Rather, the trial court made its own determination and act upon its own initiative to not hand down a sentence at all for the Complicity offenses described in the indictment, verdict entry and jury verdict forms. Ohio courts lost jurisdiction to impose a sentence for the complicity charges which Appellant protest, and that it's this Court's duty to discharge the sentence accordingly.

**GROUND THIRTY-FIVE:** The Second Appellate District Court of Appeals of Ohio erred when it decided not to certify a conflict with the decisions rendered out of the first and ninth appellate districts court of appeals.

**Supporting Facts:** Petitioner contends the opinion render by the Second Appellate District Court of Appeals, to not certify the conflict with the First Appellate District, and Ninth Appellate District Courts of Appeals, was a misplaced error in law. The sufficiency of the matter holds complete venue for disposition. The matter needs to be resolved to set forth uniformity amongst the Appellate District Courts of Ohio. The Second Appellate District Court of Appeals is enforcing an unsubstantiated legal analysis, that judges within Ohio does not have to sign judgment entries. Insofar, the Second Appellate District Court of Appeals opinion is in conflict with other Appellate District Court of Appeals throughout Ohio. The Chief Justice of the Ohio Supreme Court declined to rectify this issue, however, Ohio Justice O'Neil dissented from that opinion to resolve this ongoing growing concern.

(Amended/Supplemental Federal Habeas Petition. ECF No. 11-1, PageID 127-29.)

## Procedural and Factual History

Wilson was indicted by the Montgomery County Grand Jury in 2007 on two counts of Complicity to Commit Felonious Assault in violation of Ohio Revised Code § 2903.11(A)(2) (Counts 3-4) with firearm specifications attached to each count  (State Court Record, ECF No.

31, Exh. 1, PageID 4204).   Following a jury trial, Wilson was found guilty as charged on both counts and specifications. *Id*. at Exh. 13, PageID 4228.  (On December 17, 2007, the court sentenced Wilson to four years on each of the complicity counts and three years on each of the firearm specifications. The court merged the complicity counts with the two firearm specifications and sentenced Wilson to an aggregate sentence of seven years. *Id*. at  Exh. 14, PageID 4234.

On January 16, 2008, Wilson, through new counsel, appealed to the Court of Appeals of Ohio, Second Appellate District, Montgomery County, raising the following assignments of error:

> I. The trial court erred in refusing to instruct on the affirmative defense of defense of another; the lesser included offense of assault; and the inferior degree offense of aggravated assault.
>
> II. Appellant's conviction for complicity to felonious assault was against the manifest weight of the evidence and the evidence was insufficient to support Appellant's conviction for felonious assault.
>
> III. The trial court erred in refusing to permit defense counsel to impeach a witness, Eugene Talbott, by prior conviction.

*Id*. at  Exh. 16, PageID 4238.

The Second District set forth the facts of this case on direct appeal as follows:

> **[¶2]** In the early morning hours of May 29, 2007, Eugene Talbott and several of his friends were sitting on the steps of the apartment building at 62 Central Avenue in Dayton. They saw a female, Timmesha Manson, exit an apartment building located across the street at 39 Central Avenue. Manson was stumbling and vomiting, and appeared to be sick or drunk.
>
> **[¶3]** A short time later, Defendant, who is Manson's boyfriend, exited that same building and stood on the steps, watching Manson. When one of Talbott's friends, Strobridge Giles, asked Manson if she was alright, Manson said she was fine. When Giles asked if she was sure of that, Manson began cussing at Giles. Eugene Talbott approached Manson and asked if she was alright. Manson cussed at Talbott, and they argued.

14

[¶4] When Manson began to walk away, Talbott decided to follow Manson, walking several feet behind her, admittedly to make her angry. Manson picked up a brick and turned toward Talbott, and Talbott shouted to Defendant to come and get his woman. Manson then threw the brick at Talbott, but missed. At that point another one of Talbott's friends, Brandy McBeath, came over and shoved Manson. Defendant caught Manson, preventing her from falling. Defendant then handed Manson a .9mm semi-automatic handgun, whereupon Manson immediately fired several shots, striking Talbott in the right thigh.

[¶5] Defendant took the gun back from Manson and they ran to 50 Central Avenue, from where Defendant fired several more shots in the direction of the place where Talbott and his friends had been sitting. Defendant used the gun to break the glass out of the doors, and he and Manson entered the building. Defendant suffered cuts to his hands and arms and left a blood trail. Police responding to the shooting scene followed the trail to Defendant's mother's apartment, where Defendant and Manson were found and arrested and the .9mm handgun used in the shooting was recovered.

*State v. Wilson*, 2009-Ohio-525, 2009 Ohio App. LEXIS 460 (Ohio App. 2nd Dist. Feb. 6, 2009). Following extensive motion practice and briefing on the appeal, the court of appeals affirmed Wilson's conviction and sentence. *Id.*

On March 25, 2009, Wilson filed a *pro se* appeal to the Ohio Supreme Court and a motion for delayed appeal which the court granted. Ultimately, the Ohio Supreme Court declined jurisdiction and dismissed the appeal. *State v Wilson,* 2009-Ohio-4233, 122 Ohio St.3d 1502 (2009).

On May 5, 2009, Wilson filed a *pro se* application for reopening appeal under Ohio App. R. 26(B) (State Court Record, ECF No. 31, Exh. 38, PageID 4515). Because the application was not properly filed, the court of appeals denied it. On May 29, 2009, Petitioner filed an amended application. *Id*. at Exh. 39, PageID 4518. On July 27, 2009, the Ohio Court of Appeals again denied the application to reopen as improperly filed. *Id*. at Exh. 43, PageID 4577.

On September 8, 2009, Wilson filed a *pro se* notice of appeal (ECF No. 31, Exh. 48, PageID 4597) to the denial of his application to reopen with the Ohio Supreme Court which they dismissed as not involving any substantial constitutional question.  *State v Wilson,* 2009-Ohio-6015, 123 Ohio St. 3d 1496 (2009).

On June 10, 2008, Wilson filed a *pro se* post-conviction petition to vacate the judgment which the trial court overruled without hearing  (State Court Record, ECF No. 31, Ex. 58,  PageID 4665).

On December 8, 2008, Wilson filed a *pro se* notice of appeal with the Second District Court of Appeals.  Following briefing on the appeal, the Second District Court of Appeals affirmed the judgment of the trial court on January 25, 2013.  *State v. Wilson,* 2013-Ohio-180, 2013 Ohio App. LEXIS 129 (Ohio App. 2nd Dist. 2013)  Wilson appealed *pro se* to the Ohio Supreme Court which declined jurisdiction over a subsequent appeal.  *State v. Wilson,* 2013-Ohio-1857, 135 Ohio St. 3d 1433 (2013).

From March 30, 2010, through September 17, 2010, Wilson filed various motions in the trial court and received unfavorable rulings (State Court Record, ECF No. 31-1, Exh. 82 to Exh. 96, PageID 5069-5159).   The trial court held an oral hearing on October 15, 2010, on Wilson's motion for a new trial which was overruled on January 27, 2011. *Id*. at Exh. 98, PageID 5163.

On February 23, 2011, Wilson appeared via video-conferencing with counsel for resentencing pursuant to Ohio Revised Code § 2929.191 to correct a defect in the imposition of post-release control.  Thereafter, the trial court filed an amended judgment of conviction, which imposed a term of post-release control, *nunc pro tunc* to the date of the 2007 judgment of conviction  (State Court Record, ECF No. 31-1, Exh. 100, PageID 5174).

Wilson, through counsel, filed an appeal from the February 23, 2011, decision, including the PRC Advisory Sentencing, the denial of a new trial, and other trial court errors during pretrial, trial, and sentencing raising the following assignments of error:

> 1. A termination entry that does not comply with R.C. 2505.02 is not a final appealable order.
>
> 2. A lapse of over three years between trial and sentencing violates the Appellant's right to speedy sentencing under Crim. R. 32(A).
>
> 3. The Appellant's speedy trial rights were violated by a three year trial.
>
> 4. The trial court erred in not conducting a full sentencing hearing de novo.
>
> 5. The trial court erred in failing to stay appellant's costs, fines and restitution.
>
> 6. The trial court erred in denying the Appellant's motion to file a delayed motion for new trial.

(State Court Record, ECF No. 31-2, Exh. 105, PageID 5187.)  Following briefing on the appeal, the Ohio Court of Appeals affirmed the trial court's denial of relief on April 13, 2012. *State v. Wilson,* 2012-Ohio-1660, 2012 Ohio App. LEXIS 1450 (Ohio App. 2nd Dist. 2012).   The Ohio Supreme Court declined jurisdiction over a subsequent appeal as not involving any substantial constitutional question.  *State v. Wilson,* 2012-Ohio-4021, 132 Ohio St. 3d 1515 (2012).

On July 13, 2012, Petitioner filed a second application to reopen his direct appeal under Ohio App. R. 26(B) arguing that the following claims were not considered on direct appeal due to appellate counsel's ineffectiveness:

> 1. Nunc pro tunc entry could not enter disposition for Counts 3 and 4 where the record nor the original termination entry dispose of the counts and a hearing *de novo* was required.
>
> 2. Nunc pro tunc entry is prohibited by law to correct judge "rubber stamp" signature for final order component.

17

> 3. Trial court erred by overruling appellant's *pro se* motions 1-9 and request to act in *pro se* capacity.

> 4. Trial court erred by disallowing the attendance of Ohioans to public tribunals violating due process clauses.

> 5. The trial court erred when improper notification of videoconference violated Crim. R. 43(A) and due process rights.

> 6. Trial court abused its discretion by refusing to reschedule submission date for written closing arguments.

> 7. Appellate counsel was ineffective for failing to secure adequate transcripts of the proceedings.

> 8. Trial court erred when it overruled motion for leave assuming that appellant knew "Davis" prior to the incident.

(State Court Record, ECF No. 31-2, Exh. 113, PageID 5336.)

On November 28, 2012, Wilson filed an amendment to his application to reopen arguing

appellate counsel's failure to argue the following additional claims on direct appeal:

> 9. The trial court abuse [*sic*] its direction [*sic*] by not conducting a full hearing de novo, which violated due process provisions by not sentencing appellant to the actual charges he was convicted by the jury.

> 10. Trial court erred when it decline appellant accessibility to inspect and copy public records to support a scheduled evidentiary hearing.

> 11. Trial counsel was ineffective for failing to amend the motion for leave with additional affidavits, secure a copy of discovery, withholding of documentation, and subpoena witnesses for the evidentiary hearing.

*Id*. at Exh. 114, PageID 5363.

On December 19, 2012, the Ohio Court of Appeals rejected Wilson's second application

to reopen, noting they did not consider Wilson's untimely and improperly filed amendment. *Id*.

at Exh. 115, PageID 5565. The Ohio Supreme Court declined jurisdiction over a subsequent

18

appeal pursuant to S.Ct.Prac.R. 7.08 (B)(4).  *State v. Wilson,* 2013-Ohio-1123, 134 Ohio St. 3d 1508 (2013).

On March 1, 2013, Wilson filed a *pro se* "Successive Post Conviction Petition for Relief to Set Aside the Conviction, Sentence and Judgments" (State Court Record, ECF No. 31-2, Exh. 119, PageID 5607) which the Montgomery County Court of Common Pleas dismissed as not properly filed. *Id*. at Exh. 120, PageID 5690.    On July 8, 2013, Wilson *pro se* appealed denial of his successive post-conviction petition to the Second District Court of Appeals who affirmed the judgment of the district court.  *State v. Wilson,* 2014-Ohio-5808, 2014 Ohio App. LEXIS 5622 (Ohio App. 2nd Dist. 2014).  On May 20, 2015, The Supreme Court of Ohio declined jurisdiction pursuant to S.Ct.Prac.R. 7.08 (B)(4).  *State v. Wilson*, 2015-Ohio-1896, 142 Ohio St. 3d 1467 (2015).

# Analysis

**Ground One:  Ineffective Assistance of Appellate Counsel**

In his First Ground for Relief, Wilson claims his appellate attorney provided ineffective assistance of counsel in unspecified ways, i.e., "throughout the compulsory legal process. . . . Appellate counsels [sic]  failed to challenge the state-court proceedings within their entirety."

This claim fails to state a claim upon which habeas corpus relief can be granted.  Federal Rules of pleading require  more than mere legal conclusions to state a claim.

> Factual allegations must be enough to raise a right to relief above
> the speculative level,   see 5 C. Wright & A. Miller, Federal
> Practice and Procedure § 1216, pp. 235-236 (3d ed.2004)("[T]he

> pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)(" Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

Wilson's First Ground for Relief does not say what in particular it is that appellate counsel did or did not do that constituted ineffective assistance of appellate counsel.  The First Ground for Relief should therefore be dismissed without prejudice for failure to state a claim upon which habeas corpus relief can be granted.

**Ground Two:  Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Wilson claims he received ineffective assistance of trial counsel in twelve separate ways as follows:

> 1) Counsel permitted petitioner to be sentenced to offenses contrary to the findings of the jury and/or as enumerated by the Ohio Revised Code;
>
> 2) Counsel permitted prosecutors to withhold discovery materials;
>
> 3) Counsel failed to obtain witness statements;

4) Counsel failed to subpoena witnesses;

5) Counsel failed to investigate witnesss;

6) Counsel failed to investigate tangible items;

7) Counsel failed to acquire all tangible items;

8) Counsel allowed the trial court to forbid a public tribunal of the legal proceedings;

9) Counsel failed to obtain experts;

10) Counsel allowed jury misconduct;

11) Counsel failed to sustain a proper defense;

12) Counsel failed to advise Wilson of a plea deal negotiation.

(Amended Petition, as quoted and numbered in Return of Writ, ECF No. 32, PageID 5891.)

Most of these subclaims are sufficiently definite to state a claim under the Constitution. However, sub-claims six, seven, and eight suffer from the same deficiency as Ground One – they are mere legal conclusions.

The Respondent argues the remaining claims are barred by Wilson's procedural defaults in presenting them to the state courts.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406

(6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986);  *Engle*, 456 U.S. at 110;  *Wainwright*, 433 U.S. at 87.  *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963).  *Coleman*, 501 U.S. at 724.

"A claim may become procedurally defaulted in two ways." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013), *quoting Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a claim is procedurally defaulted where state-court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state-court judgment declines to reach the merits because of a petitioner's failure to comply with a state procedural rule. *Id*. Second, a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule. *Id*.

Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright*. *Murray*, 477 U.S. at 485; *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th Cir.), *cert denied,* 474 U.S. 831 (1985).  Failure to present an issue to the state supreme court on discretionary review constitutes procedural default.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted).  "Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and

pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009), *citing Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 846-7(1999)); *see also Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) ("A federal court is also barred from hearing issues that could have been raised in the state courts, but were not[.]"). The corollary to this rule is that where a petitioner raised a claim in the state court but in violation of a state's procedural rule, a state court must expressly reject the claim on that procedural ground for a federal court to deem the claim defaulted. *See Williams*, 460 F.3d at 806 (noting that a state court's expressed rejection of a petitioner's claim on procedural basis and petitioner's complete failure to raise a claim in state court are the two ways a claim can be in procedural default).

Ohio requires ineffective assistance of trial counsel claims which depend on the trial record to be raised on direct appeal, but claims depending on evidence *dehors* the record to be raised by petition for post-conviction relief under Ohio Revised Code § 2953.21.

> As is well-established (although sometimes muddled by courts), two types of procedural barriers might preclude federal review of claims in a habeas petition. The first type, procedural default, is a judicially created rule, grounded in fealty to comity values and requiring federal courts to respect state court judgments that are based on an "independent and adequate" state procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 732, 115 L. Ed. 2d 640, 111 S. Ct. 2546 (1991); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (establishing a four-part test for determining whether a procedural rule is an independent and adequate state ground). In procedural default cases, the state court or courts reject a direct or post-conviction appeal because the defendant failed to comply with some state law or rule concerning timeliness, pleading requirements, sufficient evidence, or the like.
>
> The second type of bar, exhaustion, is similarly grounded in respect for state court procedures, but it is federally mandated by AEDPA, see 28 U.S.C. § 2254(b)(1)(A), (c), and requires petitioners to give state courts a "fair opportunity" to assess petitioners' claims. *O'Sullivan*, 526 U.S. at 844. Often, federal

23

courts will rule that a petitioner's claim is "defaulted" because the petitioner failed to exhaust his remedies and the time for refiling an appeal in the state court has passed. The unexhausted claim is then classified as "procedurally defaulted" and deemed forfeited absent a showing of cause and prejudice. *See In re Cook*, 215 F.3d 606, 607-08 (6th Cir. 2000).

But exhaustion and procedural default are distinguishable in an important sense. A defendant could fail to exhaust a claim without procedurally defaulting if he could return to the state courts to exhaust. Alternatively, as in this case, the defendant could fail to exhaust without defaulting if a clarification in procedural law indicates that he has already taken the necessary action to exhaust. That is, forfeiture by failure to exhaust entails a legal fiction, of sorts. The state court has not rejected an appeal based on a state rule violation; there is no declaration by the state court of an independent and adequate state ground to which the federal court must defer. Instead, the federal court makes a presumption that the state court would reject the appeal on independent and adequate state grounds if the petitioner tried to file it. But, by declaring the claim forfeited, the federal court saves the petitioner and the state court from respectively preparing and rejecting a futile filing. The federal court then views the claim through the lens of procedural default to determine whether there is cause and prejudice to excuse the default. In short, the crux of forfeiture by failure to exhaust is that the federal court's default decision rests upon a presumption about what the state court would do, rather than respect for what a state court actually did.

*Abdur'Rahman v. Bell (In re Abdur'Rahman)*, 392 F.3d 174, 186-187 (6th Cir., 2004)(vacated on other grounds, 545 U.S. 1151 (2005).

The procedural default analysis of *Wainwright* and its progeny is fully applicable to § 2255 motions. *United States v. Frady*, 456 U.S. 152 (1982); *Kaufman v. United States*, 394 U.S. 217 (1969); *Ratliff v. United States*, 999 F.2d 1023 (6th Cir. 1993).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley,* 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry,* 146 F.3d

345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138; accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

As the Respondent notes, Wilson did not raise any ineffective assistance of trial counsel either on direct appeal to the Second District Court of Appeals or in his petition for post-conviction relief under Ohio Revised Code § 2953.21. Therefore claims based on the record are barred by Ohio's criminal *res judicata* doctrine. *State v. Perry*, 10 Ohio St. 2d 175 (1967)(emphasis *sic*.); *see also State v. Cole*, 2 Ohio St. 3d 112 (1982); *State v. Duling,* 21 Ohio St. 2d 13 (1970). The *Perry* rule has been repeatedly upheld in the Sixth Circuit as an adequate and independent state rule. *White v. Mitchell*, 431 F.3d 517, 527 (6th Cir. 2005), *citing Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir.

25

2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994); *Van Hook v. Anderson*, 127 F. Supp. 2d

899 (S.D. Ohio 2001). As to claims based on evidence outside the state court record, Wilson's

post-conviction petition was dismissed because he failed to submit any evidence outside the

record in support of those claims (State Court Record, ECF No. 31, Exh. 58, PageID 4665,

4670-74).

Ground Two should be dismissed with prejudice.


**Ground Three: Improper Form of Judgment Entry**


In his Third Ground for Relief, Wilson claims the judgment entry of the trial court is not

a proper final appealable order within the meaning of Ohio Revised Code § 2505.02.

Ground Three fails to state a claim upon which habeas corpus relief can be granted.

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. §

2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990);

*Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the

province of a federal habeas court to reexamine state court determinations on state law questions.

In conducting habeas review, a federal court is limited to deciding whether a conviction violated

the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68

(1991). The United States Constitution does not impose on the States a required form of final

judgment. Ground Three should be dismissed.


**Ground Four: Void Judgment**

In his Fourth Ground for Relief, Wilson claims the Common Pleas Court judgment sentencing him is void for lack of subject matter jurisdiction.  The Supporting Facts paragraph asserts the General Assembly has created a process that the judiciary must follow and failure to do so results in a void judgment.

A claim that a state court that imposed a sentence lacked subject matter jurisdiction over the crime would state a claim cognizable in habeas corpus.  However, the crime for which Wilson was tried are felony offenses committed on Central Avenue in Dayton, Ohio, and therefore come within the subject matter jurisdiction of the Montgomery County Common Pleas Court, the court that imposed judgment in this case.

If Wilson has some claim beyond lack of subject matter jurisdiction, e.g., related to the form of judgment, that is a matter of state law which is not cognizable in habeas corpus.  Ground Four should be dismissed.


**Ground Five:  Manifest Weight and Sufficiency of the Evidence**


In his Fifth Ground for Relief, Wilson claims his conviction for complicity is against the manifest weight of the evidence and is not supported by sufficient evidence.

A weight of the evidence claim is not a federal constitutional claim.  *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).  The manifest weight portion of Ground Five should be dismissed for failure to state a cognizable habeas corpus claim.

An allegation that a verdict was entered upon insufficient evidence does state a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*,

200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc).

In order for a conviction to be constitutionally sound, every element of the crime must be proved

beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in
> the light most favorable to the prosecution, any rational trier of fact
> could have found the essential elements of the crime beyond a
> reasonable doubt . . . .  This familiar standard gives full play to the
> responsibility of the trier of fact fairly to resolve conflicts in the
> testimony, to weigh the evidence and to draw reasonable
> inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United*

*States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was recognized in

Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).

However, Wilson's insufficiency of the evidence claim as pled in the Amended Petition

is procedurally defaulted.  Although he presented an insufficiency claim to the Second District

Court of Appeals, it is based on a completely different set of facts or theories than the one pled in

the Petition.  In state court he complained of a failure to prove planning or that he shared

Timmesha Manson's intent.  Here he pleads completely different claims about the surveillance

videos of the crime.

For these reasons, Ground Five should be dismissed.

**Ground Six:  Denial of Motion for New Trial**

In his Sixth Ground for Relief, Wilson complains that his motion for new trial based on

discovering the correct name of an eyewitness was improperly denied.

There is no federal constitutional right to a new trial upon the discovery of new evidence.

> State law issues are not subject to habeas review, see *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991), and this Court can review the denial of [Petitioner's] motion for new trial only for constitutional error. To establish a constitutional due process claim, Pudelski must demonstrate that the trial court's denial of his motion for new trial was "so egregious" that it violated his right to a fundamentally fair trial. *See Fleming v. Metrish*, 556 F.3d 520, 535 (6th Cir. 2009); *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004).

*Pudelski v. Wilson*, 576 F.3d 595, 611 (6th Cir. 2009)(Holschuh, D.J.)  Wilson has not

demonstrated that denial of a new trial deprived him his right to a fundamentally fair trial.

Wilson's trial attorney, Daniel J. O'Brien, listed as a witness "Ryan Davis Present address

unknown." (Decision on Motion for New Trial, State Court Record, ECF No. 31-1, Exh. 98,

PageID 5165.)  Mr. O'Brien's source for the name is not disclosed, but Wilson later met up with

"Brian Davis" at place of common imprisonment.  As Judge Huffman recites in detail, Wilson

prepared the new evidence affidavit for Davis's signature, but Davis repudiated almost all of

what Wilson had written.  It is very unlikely that a new trial with Davis testifying would have

changed the result.

Therefore Ground Six should be dismissed.


**Ground Seven:  Withholding of Exculpatory Evidence**


In his Seventh Ground for Relief, Wilson asserts the State withheld exculpatory evidence

from the defense.

Respondent asserts this claim does not properly plead a federal constitutional basis, but the

facts alleged come within the doctrine of *Brady v. Maryland*, 373 U.S. 83 (1963), which holds

the State has a duty to produce exculpatory evidence in a criminal case.  If the State withholds

evidence and it is material, the conviction must be reversed.

In the alternative, Respondent asserts the claim is procedurally defaulted because it was presented for the first time on Wilson's appeal from denial of his second post-conviction petition and Wilson never presented any evidence of a *Brady* violation.  Specifically, as to a possible gunshot residue test, the testimony at trial was that no such test had been conducted and Wilson has produced no evidence to the contrary.  Ground Seven should therefore be dismissed.


**Ground Eight:  Erroneous Jury Instructions**


In his Eighth Ground for Relief, Wilson claims he was denied his rights to due process and a fair trial when the trial court refused to instruct the jury (1) on the defense of defense of another, (2) on the lesser included offense of assault, and (3) on the inferior degree offense of aggravated assault.

The Warden asserts this Ground for Relief is procedurally defaulted because it was raised only as a state law claim in the Ohio courts (Return of Writ, ECF No. 32, PageID 5901).  On examining Wilson's Brief on appeal, the Court finds that he cited only Ohio cases and indeed did not make any reference to the United States Constitution  (State Court Record, ECF No. 31, Exh. 16, PageID 4249-56).

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim.  *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other

grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

"Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2004); accord, *Jacobs v. Mohr*, 265 F.3d 407, 415 (6th Cir. 2001); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 674, 681 (6th Cir. 2000); *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004).

A state prisoner ordinarily does not 'fairly present' a federal claim to a state court if that court must read beyond a petition, a brief, or similar papers to find material that will alert it to the presence of such a claim. *Baldwin v. Reese*, 541 U.S. 27 (2004). When a defendant does so little to present his claim that it has not been fairly presented, then the presumption under *Harrington v. Richter* that the state court decided the claim on the merits is "fully rebutted." *Johnson v. Williams*, 568 U.S. ___, 133 S. Ct. 1088, *; 185 L. Ed. 2d 105 (2013).

Alternatively, Ground Eight is without merit. Errors in jury instruction give rise to federal constitutional claims only in the rarest of instances, e.g., if a trial court would instruct a jury that they could convict on a preponderance of the evidence. In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous, or universally condemned; taken as a whole they must be so infirm that they rendered the entire trial fundamentally unfair. *Henderson v. Kibbe,* 431 U.S. 145 (1977). The only question for a habeas court to consider is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62 (1991), *quoting Cupp v. Naughten*, 414 U.S. 141 (1973). The category of

infractions that violate fundamental fairness is very narrow.  *Byrd v. Collins*, 209 F.3d 486 (6th Cir. 2000), *citing Dowling v. United States*, 493 U.S. 342, 352 (1990).  There is no constitutional requirement to give a lesser included offense instruction in a non-capital case.  *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001); *Bagby v. Sowders*, 894 F.2d 792, 795-97.

Ground Eight should therefore be dismissed.

## Ground Nine:  Denial of Impeachment by Prior Convictions

In his Ninth Ground for Relief, Wilson claims he should have been allowed to impeach State's witness Eugene Talbott with Talbott's prior criminal conviction.  Wilson argued this claim purely as a state law claim on appeal to the Second District.  That court rejected the claim because Wilson's counsel had not shown whether the conviction was for a felony or misdemeanor and whether it was in the last ten years.  *State v. Wilson*, C.A. Case No. 22581, 2009-Ohio-525, ¶ 70, 2009 Ohio App LEXIS 460 (2nd Dist. Feb. 6, 2009).  That is an indisputably correct decision under Ohio R. Evid. 609.  Because this claim was not presented as a federal constitutional claim to the Second District, it is procedurally defaulted.  Moreover, it is without merit as no clearly established Supreme Court precedent mandates the impeachment attempted here.

Ground Nine should be dismissed.

## Ground Ten:  Admission of Hearsay

In his Tenth Ground for Relief, Wilson complains of admission of the testimony of

several police officers as to the content of video surveillance tapes without their having been qualified as experts in the authentication of video evidence.

No provision of the United States Constitution requires a witness to be qualified as an expert to testify to the content of a video recording.  Ground Ten should be dismissed.


**Ground Eleven:  Selective Prosecution**


In his Eleventh Ground for Relief, Wilson claims he is the victim of selective prosecution.

Selective prosecution claims are appropriately judged by ordinary equal protection standards.  *Cornwell v. Bradshaw*, 559 F. 3d 398, 411 (6th Cir. 2009), *citing Wayte v. United States,* 470 U.S. 598, 608 (1985).

> There is no right under the Constitution to have the law go unenforced against you, even if you are the first person against whom it is enforced, and even if you think (or can prove) that you are not as culpable as some others who have gone unpunished. The law does not need to be enforced everywhere to be legitimately enforced somewhere, and prosecutors have broad discretion in deciding whom to prosecute.

*Futernick v. Sumpter Township*, 78 F.3d 1051 (6th Cir., 1996), *citing Wayte*, 470 U.S. at 607 (choice to prosecute only those non-registrants for Selective Service who inform the government of their intention not to register.)  To succeed, a defendant must show that he was picked for prosecution on some invidious discriminatory basis while other persons who do not fit that classification were not prosecuted.  Even in his habeas petition, Wilson makes no claim that he was selected for prosecution on an impermissible basis.

Second, the claim is procedurally defaulted because it was not raised on direct appeal to

the Second District Court of Appeals.

Ground Eleven should be dismissed.


**Ground Twelve:  Improper Imposition of Financial Sanctions**


In his Twelfth Ground for Relief, Wilson claims the trial court imposed financial sanctions on him without following proper procedure under Ohio law.  This claim is not cognizable in federal habeas corpus, which is directed only to claims of unconstitutional custody. Moreover, this claim was not raised on direct appeal.

Ground Twelve should be dismissed.


**Ground Thirteen:  Failure to Instruct on *Mens Rea* During Voir Dire**


In his Thirteenth Ground for Relief, Wilson claims he was denied due process when the trial judge did not instruct on *mens rea* during voir dire. This Ground should be dismissed because no Supreme Court precedent requires such an instruction.  Second, the claim is procedurally defaulted because it was never presented to the Second District Court of Appeals on direct appeal.

Ground Thirteen should be dismissed.


**Ground Fourteen:  Failure to Excuse Biased Jurors**


In his Fourteenth Ground for Relief, Wilson claims Jurors Sherrer and Thornton should

have been excused because Juror Sherrer had a family relationship with Rayshawn Sherrer who was known to be a person of interest to the police regarding this crime and because Juror Thornton is believed to have been related to Officer Thornton, a State's witness.

This Ground for Relief is procedurally defaulted. The claim was raised for the first time in Wilson's Application to Reopen under Ohio R. App. P. 26(B) which was denied on various well-stablished state procedural grounds and also on the merits. It was also raised as a claim in Wilson's second petition for post-conviction relief under Ohio Revised Code § 2953.23 which was also dismissed on procedural ground.

Ground Fourteen should be dismissed.

## Ground Fifteen:  Trial Court Ex Parte Communication with the Jury

 Ground Fifteen should be dismissed as procedurally defaulted because, although it is part of the record, it was not raised on direct appeal.

## Ground Sixteen:  Disproportionate Sentencing

In his Sixteenth Ground for Relief, Wilson complains that his sentence is disproportionate to the sentence of the principal offender.

This Ground for Relief is without merit. While the Supreme Court has interpreted the Eighth Amendment to contain a proportionality principle, the Amendment does not require strict proportionality between crime and sentence when comparing two offenders convicted in the same incident. *Harmelin v. Michigan*, 501 U.S. 957 (1991). Wilson has not shown that the

sentence in this case is an unreasonable application of *Harmelin*.

Ground Sixteen should be dismissed.


## Ground Seventeen:  Denial of Fair Trial by Dictating Trial Clothing


Wilson claims he was denied a fair trial when the trial court did not permit him to wear at trial clothing furnished by his family.  He was compelled to wear the same shirt and pants all five days of the trial, which he asserts would cause the jury to infer he was in custody.

This Ground is procedurally defaulted because it was never raised as an objection in the trial court.  Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus,  is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir.  2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v.  Bradshaw*, 482 F.3d 442 (6th Cir.  2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005);  *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing  Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001);  *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).

Ground Seventeen should be dismissed.


## Ground Eighteen:  Failure to Allow Access to Public Records


In his Eighteenth Ground for Relief, Wilson complains that the trial court would not

allow him access to public records he claims he needed "to support pending litigation."  As the Warden argues, this claim does not plead any violation of the United States Constitution and should be dismissed.

**Ground Nineteen:  Denial of Speedy Trial**

Wilson claims his right to a speedy trial was denied when the trial was delayed as long as it was.  This claim is procedurally defaulted because it was never raised on direct appeal to the Second District and it should be dismissed.

**Ground Twenty:  Failure to Conduct a *De Novo* Sentencing Hearing**

Wilson claims the trial court violated Ohio law when it did not conduct a full *de novo* re-sentencing hearing when it corrected the judgment to show that conviction had been by a jury and that post-release control had been properly imposed.  On its face, this is merely a claim of violation of state law and not cognizable in habeas corpus.  Ground Twenty should be dismissed.

**Ground Twenty-One:  Improper Correction of the Indictment**

As with Ground Twenty, this is purely an Ohio law claim and should be dismissed on that basis.

**Ground Twenty-Two:  Judicial Signature by Rubber Stamp**

In this Ground, Wilson claims the judgment entry was not properly signed as required by Ohio R. Cr. P. 32.  Again, this is purely a state law claim and should be dismissed on that basis.

## Ground Twenty-Three:  Failure to Adequately Notify of a Video Conference

In this Ground for Relief, Wilson claims he received insufficient notice of a video appearance for re-sentencing on February 23, 2011.

While a criminal defendant has a right to notice of a hearing in sufficient time to prepare, the Second District Court of Appeals found that no objection was made and in any event the defendant and his counsel were prepared (Decision, State Court Record, ECF No. 31-2, PageID 5571-72).  Those findings of fact are binding on this Court.  Thus the claim is both procedurally defaulted for lack of contemporaneous objection and without merit.  The Second District decided the notice was adequate.  When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

Ground Twenty-Three should be dismissed.

## Ground Twenty-Four:  Improper Reliance on *Res Judicata*

In this Ground for Relief, Wilson claims the Ohio courts improperly applied the doctrine of *res judicata* to his request on re-sentencing.  Whether or not Ohio properly applied its own *res judicata* doctrine is a question of Ohio law which is not cognizable in habeas corpus. Ground Twenty-Four should be dismissed.

**Ground Twenty-Five:  Failure to Properly Impose a Sentence for Complicity**

The question presented is purely one of state law not cognizable in habeas corpus. Ground Twenty-Five should be dismissed.

**Ground Twenty-Six:  Failure to Conduct a Competency Evaluation**

As noted in the Return (ECF No. 32, PageID 5923), the Second District held this claim was barred by *res judicata* because it was available on the direct appeal record and not raised. As noted above, the Sixth Circuit has repeatedly held Ohio's *res judicata* doctrine is an adequate and independent state ground of decision.  Ground Twenty-Six should be dismissed.

**Ground Twenty-Seven:  Various Challenges to the Jury**

As noted in the Return (*Id.* at PageID 5924), this claim was available in the trial court record, but not raised on direct appeal and is therefore procedurally defaulted on the basis of *res judicata.* Ground Twenty-Seven should be dismissed.

**Ground Twenty-Eight:  Denial of Right to Public Trial**

In Ground Twenty-Eight, Wilson claims the trial court denied him his right to a public trial by not allowing his family, friends, and other "partial" persons to be present for voir dire or for the evidentiary hearing on his motion for new trial.  The first part of this claim is barred by *res judicata*  because it was not presented on direct appeal.  The second part is barred by Wilson's failure to present it on appeal from denial of the motion for new trial.

Ground Twenty-Eight should be dismissed.

**Ground Twenty-Nine:  Ineffective Assistance of Trial Counsel on the Motion for New Trial**

In this Ground for Relief, Wilson claims his attorney at the motion for new trial hearing provided ineffective assistance.

The right to appointed counsel extends to the first appeal of right and no further. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974). Ineffective assistance of counsel can excuse procedural default only when it occurs in a proceeding where a defendant is constitutionally entitled to counsel under the Sixth Amendment. *Wainwright v. Torna*, 455 U.S. 586 (1982)(where there is no constitutional right to counsel there can be no deprivation of effective counsel); *Riggins v. Turner*, 1997 U.S. App. LEXIS 6115, *5 (6th Cir. 1997); *Barkley v. Konteh*, 240 F. Supp. 2d 708, 714 (N.D. Ohio 2002).

This Ground for Relief therefore does not state a claim cognizable in habeas corpus and should be dismissed on that basis.

40

**Ground Thirty:  Denial of Self-Representation**

In Ground Thirty, Wilson claims he was deprived of his right to self-representation when the court denied his request to represent himself in the evidentiary hearing on his motion for new trial.  This Ground does not state a federal constitutional violation.  There is a constitutional right for a competent defendant to represent himself at trial.  *Faretta v. California,* 422 U.S. 806, 835 (1975).  However, the Supreme Court has not extended that right beyond trial and has expressly denied it applies on direct appeal.  *Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152 (2000).  Wilson has failed to show that the Ohio courts' decision on this claim is an unreasonable application of *Fareta* and *Martinez.*   Ground Thirty should be dismissed.

**Ground Thirty-One:  Denial of Due Process in Post-Conviction**

In Ground Thirty-One, Wilson complains that the State failed to provide required service in his Ohio Revised Code § 2953.21 post-conviction relief proceeding.  Post-conviction state collateral review is not a constitutional right, even in capital cases.  *Murray v. Giarratano*, 492 U.S. 1 (1989); *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Estelle v. Dorrough*, 420 U.S. 534, 536 (1975); *Kirby v. Dutton,* 794 F.2d 245 (6th Cir. 1986)(claims of denial of due process and equal protection in collateral proceedings not cognizable in federal habeas because not constitutionally mandated).  *Accord, Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001); *Johnson v. Collins,* 1998 WL 228029 (6th Cir. 1998); *Trevino v. Johnson*, 168 F.3d 173 (5th Cir.

1999); *Zuern v. Tate*, 101 F. Supp. 2d 948 (S.D. Ohio 2000), *aff'd*., 336 F.3d 478 (6th Cir. 2003).

Ground Thirty-One fails to state a claim on which habeas corpus relief can be granted and should be dismissed on that basis.

## Ground Thirty-Two:  Failure to File Appropriate Final Judgment Entry

In his Thirty-second Ground, Wilson raises again the claim of an improper judicial signature on the judgment entry that he made in Ground Twenty-two.  It should be dismissed on the same basis, to wit, that it is purely a state law claim.   Ground Thirty-Two should be dismissed.

## Ground Thirty-Three: Improper Application of *Res Judicata*

In Ground Thirty-Three Wilson claims the state courts violated his constitutional rights by applying the doctrine of *res judicata* to his re-sentencing claim.  As noted above, the Sixth Circuit has repeatedly upheld Ohio's criminal *res judicata* doctrine as an adequate and independent state ground of decision.  Ground Thirty-Three should be dismissed.

## Ground Thirty-Four:  Failure to Impose a Sentence for Complicity

In this Ground for Relief, Wilson raises again the claim made in Ground Twenty-Five.  It should be dismissed on the same basis.

**Ground Thirty-Five:  Refusal of the Court of Appeals to Certify a Conflict**

In his last Ground for Relief, Wilson claims the Second District erred when it refused to certify a conflict between its position on a question of law and that of the First and Ninth Appellate Districts.

This Ground fails to state a claim upon which habeas corpus relief can be granted.  There is no constitutional right to have a state supreme court resolve conflicts among the decisions of intermediate appellate courts.  However desirable it is to have one statement of legal principle for the whole State, the federal Constitution imposes no such requirements.  Ground Thirty-Five should also be dismissed.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

August 27, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).